UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACALYN A YOUNG, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>RONALD J SCHULTZ,<br><br>    Defendant. | Case No. 22-cv-05203-TSH<br><br>**ORDER RE: MOTION TO DISMISS**<br><br>Re: Dkt. No. 20 |

## I. INTRODUCTION

Pending before the Court is Defendant Ronald J. Schultz's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 20. Plaintiffs Jacalyn Young and Diane Lynn filed an Opposition (ECF No. 21) and Defendant filed a Reply (ECF No. 22). The Court finds this matter suitable for disposition without oral argument and **VACATES** the February 16, 2023 hearing. *See* Civ. L.R. 7-1(b). For the reasons stated below, the Court **GRANTS** Schultz's motion for the following reasons.[1]

## II. BACKGROUND

### A. Factual Background

Plaintiffs Young and Lynn reside in "The Woodlands," a townhome complex in Santa Rosa, California. ECF No. 16 ¶¶ 3-5. Young and Lynn are members of The Woodlands Owners' Association ("HOA"). *Id.* Defendant Schultz also resides in the Woodlands and is a member of the HOA. *Id.* ¶ 7.

On multiple occasions between April 14, 2021 and April 20, 2021, Schultz, or his wife Jo

---

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 6, 10, 11.

1  Schultz, emailed Young, as President of the Board of Directors of the HOA, requesting financial
2  information about management of the HOA. *Id*. ¶¶ 23-29.
3    On April 21, 2021, Schultz sent an email to Young, and he, or possibly others, hand-
4  delivered a letter to Lynn and their other neighbor Mary Ann Burwell. *Id*. ¶¶ 11-12, 14; 16-1,
5  Exhibit 1. The letters and email demanded "things of value" from all of them, including that
6  Young resign from the HOA Board of Directors. *Id*. Schultz threatened to publish false
7  information to residents of the HOA and The New York Times if Young, Lynn, and Burwell did
8  not meet his demands. *Id*. ¶ 11. This false information included that Plaintiffs and their church
9  were possibly engaging in tax fraud and money laundering. *Id*.
10   On April 22, 2021, Young wrote to all Woodlands residents informing them of Schultz's
11 email and underlying allegations. *Id*. ¶ 20. Young believed she had to disclose the email to HOA
12 members to protect her integrity and reputation as President of the Board of Directors. *Id*. ¶ 33.
13   On October 11, 2022, Schultz sent Lynn and Young another letter through email stating
14 "with the help of the Press, my goal is to motivate the IRS, The California Attorney General, and
15 the Franchise Tax Board to seriously investigate" Lynn and Young's involvement in their church.
16 *Id*. ¶ 40; 16-17, Exhibit 17.

17 **B.  Procedural Background**

18   On September 12, 2022, Plaintiffs Young and Lynn filed the instant action against
19 Defendant Schultz and DOES 1-20 for blackmail (18 U.S.C. § 873), mailing threatening
20 communications (18 U.S.C. § 876(d)), and stalking (18 U.S.C. § 2261A). ECF No. 1. On October
21 4, 2022, Schultz filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[2]
22 ECF No. 7.
23   On November 18, 2022, the Court dismissed all causes of action, finding that all claims
24 were brought under criminal statutes. ECF No. 15. The Court granted leave to file an amended
25 complaint. *Id.*
26   On December 2, 2022, Young and Lynn filed a First Amended Complaint ("FAC") against

---

[2] Schultz's motion was not clear that it was made pursuant to Rule 12(b)(6), but the Court treated it as such in its corresponding Order. ECF No. 15 at 1, n.1.

2

1  Schultz and DOES 1-20 alleging violation of the Racketeer Influenced and Corrupt Organizations
2  statute ("RICO").  ECF No. 16.
3        On December 28, 2022, Schultz filed a Motion to Dismiss pursuant to Federal Rule of
4  Civil Procedure 12(b)(6).  ECF No. 20.  On January 11, 2023, Plaintiffs filed an opposition.  ECF
5  No. 21.  On January 18, 2023, Schultz filed a reply.  ECF No. 22.

### III.   LEGAL STANDARD

      A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim.  A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and quotation marks omitted).  Rule 8 provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Thus, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009).  A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief.  *Twombly*, 550 U.S. at 555 (quotations and citation omitted).

      In considering a motion to dismiss, the court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

      If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citations and quotations omitted).  However, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated

1   failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing
2   party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876,
3   892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182
4   (1962)).

## IV.   DISCUSSION

"To state a civil RICO claim under 18 U.S.C. § 1964(c), a plaintiff must allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as "predicate acts") (5) causing injury to the plaintiff's business or property.'" *Abcarian v. Levine*, 972 F.3d 1019, 1027 (9th Cir. 2020) (quoting *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996)). Schultz argues that Plaintiffs have failed to plead the second, third, fourth, and fifth elements of the claim. ECF No. 20-1. The Court addresses each argument in turn.

### A.   Injury to Plaintiff's Business or Property

First, Schultz argues that Plaintiffs fail to allege an injury to business or property. ECF No. 20-1 at 13-16. Plaintiffs indicate they do not need to plead injury to business or property. ECF No. 21 at 16.

This element, "causing injury to the plaintiff's business or injury," is also sometimes referred to as RICO's statutory standing requirement. *See Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975 (9th Cir. 2008) ("A civil RICO 'plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation.'") (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 479 (1985)). To avoid dismissal, Plaintiffs must "plausibly allege (1) an injury to 'business or property' that is (2) 'by reason of a violation of section 1962.'" *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 957 (N.D. Cal. 2018) (quoting 18 U.S.C. § 1964(c)). "Without a harm to a specific business or property interest—a categorical inquiry typically determined by reference to state law—there is no injury to business or property within the meaning of RICO." *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005).

Here, Plaintiffs have not alleged harm to a business or property interest. To the extent that Young alleges a property interest in her position as President of the Board of Directors of the

1   HOA, it is not clear what harm to that interest she alleges to have suffered. Young and Lynn both
2   allege that they suffered emotional distress, including insomnia, high blood pressure, worry,
3   anxiety, and fatigue. ECF No. 16 ¶¶ 31, 43, 48, 53. However, emotional distress is not a
4   recoverable injury under the statute. *See Berg v. First State Ins. Co.*, 915 F.2d 460, 464 (9th Cir.
5   1990) ("[A]s a matter of law, personal injury, including emotional distress, is not compensable
6   under section 1964(c) of RICO."). Plaintiffs also hint at potential reputational harm, but that
7   injury is similarly not redressable under RICO. *See Cobb v. JPMorgan Chase Bank, N.A.*, No. C
8   12-01372 JSW, 2012 WL 5335309, at *5 (N.D. Cal. Oct. 26, 2012), *aff'd sub nom. Cobb v.
9   JPMorgan Chase Bank NA*, 594 F. App'x 395 (9th Cir. 2015) ("[A]llegations of injury to his
10  reputation or goodwill are personal injuries that are unconnected to a business or property interest
11  recognized under state law. . . ."). Based on review of the pleadings, Plaintiffs do not claim any
12  other injury and thus have failed to allege recoverable harm under 18 U.S.C. § 1964(c).

### B.  Of An Enterprise

Schultz additionally argues that Plaintiffs' factual allegations regarding the existence "of an enterprise" are deficient. ECF No. 20-1 at 16-17. Plaintiffs argue that they have alleged Schultz, his wife Jo Schultz, and their cohorts acted with a common purpose to remove Young from the Board of Directors. ECF No. 21 at 10.

The definition of a RICO "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An enterprise will be proven "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981). Here, Plaintiffs allege that Schultz was part of an association-in-fact enterprise. ECF No. 21 at 23. To plead an association-in-fact enterprise, "plaintiffs must plausibly allege the following three elements: (1) a common purpose, (2) a structure or organization, and (3) longevity necessary to accomplish the purpose." *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*, 497 F. Supp. 3d 552, 594 (N.D. Cal. 2020) (citing *Boyle v. United States*, 556 U.S. 938, 946 (2009)).

The foundation for Plaintiffs' allegation that Schultz acted as part of "an enterprise," is

almost entirely an identical statement Schultz made in separate April 21, 2021 letters to Young and Lynn, wherein he gave Young a deadline to step down from her HOA position and stated that in exchange he and his "trusted cohorts" would keep quiet Young's "possible fraud and/or money laundering." ECF No. 16 ¶¶ 30-32. The statement reads exactly: "I and my trusted cohorts are willing to hold this information confidential." *Id.*; 16-1, Exhibit 1. Plaintiffs allege that "Schultz and his cohorts simultaneously emailed the letter to Young" and hand-delivered a letter to Lynn. *Id.* ¶ 12.

The Court finds these statements insufficient to plausibly infer that Schultz is part of an "enterprise" within the meaning of the RICO statute. Preliminarily, it is unclear what Plaintiffs are alleging occurred the week of April 21, 2021, as Plaintiffs claim Schultz's "trusted cohorts" were involved in emailing and delivering letters on April 21, 2021, but also indicate that Schultz himself delivered the letters. *Id.* ¶ 14. This potential assistance seems to be the only facts from which Plaintiffs suggest a "common purpose." Most glaringly, though, there are absolutely no facts alleged that Schultz worked with anyone before or after the week of April 21, 2021. This one week of arguable collective action cannot plausibly support an ongoing organization, a continuing unit, or the longevity necessary to accomplish a purpose. *See Hopkins v. Am. Home Mortg. Servicing, Inc.*, No. 13-4447 RS, 2014 WL 580769, at *5 (N.D. Cal. Feb. 13, 2014) ("Courts often look to the length of time that the associates have interacted to determine whether they functioned as a continuing unit."); *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (determining that two years sufficiently supported that defendants functioned as a continuing unit and suggesting the inquiry "focuses on whether the associates' behavior was 'ongoing' rather than isolated activity.") (quoting *United States v. Patrick*, 248 F.3d 11, 19 (1st Cir. 2001)). *See also Boyle*, 556 U.S. at 946 ("[A]n 'enterprise' must have some longevity, since the offense proscribed by that provision demands proof that the enterprise had 'affairs' of sufficient duration to permit an associate to 'participate' in those affairs through 'a pattern of racketeering activity.'"). The pleadings provide no support that Schultz worked with anyone outside of April 2021, and thus provide no inference of an organization or longevity as required for a RICO enterprise.

### C. Racketeering Activity

Schultz additionally argues that Plaintiffs have not sufficiently pled the predicate act of extortion, specifically that there is no allegation of Schultz "obtaining property from another." ECF No. 20-1 at 17. Plaintiffs argue that they have pled the elements of extortion under 18 U.S.C. § 873. ECF No. 21 at 27-29.

"RICO defines 'racketeering activity' as any of the predicate acts listed in 18 U.S.C. § 1961(1)." *In re JUUL Labs, Inc.*, 497 F. Supp. 3d at 595. In their opposition, Plaintiffs allege violation of 18 U.S.C. § 873 as the predicate act. ECF No. 21 at 27. However, 18 U.S.C. § 873 is not included in the list of predicate acts in 18 U.S.C. § 1961(1), and thus Plaintiffs cannot rely on its violation as a predicate act. Plaintiffs also appear to generally allege "extortion." ECF No. 16 at 3, 16. Extortion is a listed predicate act as defined by 18 U.S.C. § 1961(1), and thus can establish "racketeering activity" under RICO. Pursuant to the statute, sufficiently pled allegations meeting either the elements of extortion under the Hobbs Act, 18 U.S.C. § 1951, or under state law, will in turn sufficiently allege "racketeering activity." *See United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO*, 770 F.3d 834, 837 (9th Cir. 2014) ("'[R]acketeering activity' includes, *inter alia,* 'any act which is indictable' under the Hobbs Act, 18 U.S.C. § 1951, or 'any act or threat involving . . . extortion, . . . which is chargeable under State law.'") (quoting 18 U.S.C. § 1961(1)(A), (B)).

Under the Hobbs Act, "'extortion' means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). In order for a state offense to be "extortion" within RICO's meaning "the conduct must be capable of being generically classified as extortionate." *See Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 409 (2003). "'Generic' extortion is defined as 'obtaining something of value from another with his consent induced by the wrongful use of force, fear, or threats.'" *Id.* Both generic extortion and the Hobbs Act require obtaining or seeking to obtain property. *See id.* "Obtaining property requires 'not only the deprivation but also the acquisition of property.'" *Sekhar v. United States*, 570 U.S. 729, 734 (2013) (quoting *Scheidler*, 537 U.S. at 404. "That is, it requires that the victim part with his property, and that the

7

1  extortionist gain possession of it." *Id.* (quotations and citations omitted). "[M]erely interfering
2  with or depriving someone of property" is insufficient to constitute extortion. *Scheidler*, 537 U.S.
3  at 405. "To violate the Hobbs Act, an alleged extortionist must actually appropriate (or attempt to
4  appropriate) the victim's property such that it can be exercised, transferred or sold." *United States*
5  *v. McFall,* 558 F.3d 951, 957 (9th Cir. 2009) (citing *Scheidler*, 537 U.S. at 405).

6        In this case, Plaintiffs have not identified any property which Schultz could exercise,
7  transfer, or sell. Plaintiffs state in their opposition that they "are not relying on the Hobbs Act,"
8  but argue even if they were they have alleged loss of intangible property or things of value. ECF
9  No. 21 at 29. The alleged things of value include "avoiding the time and expense of government
10 audits, avoiding exposure in the New York Times, the value to Schultz of Young resigning from
11 the Board, the value to Young of being a Board member, and the value to the members of the
12 HOA of having Young serve on the Board." *Id.* at 29-30. To the extent that Plaintiffs argue
13 Young had a property right to her HOA position, they have not alleged that Schultz appropriated,
14 or attempted to appropriate, that property. *Cf. Wilson v. Ridgeway*, No. 20-CV-00381-PJH, 2020
15 WL 4590241, at *3 (N.D. Cal. Aug. 7, 2020) (in the context of California's civil extortion statute,
16 allegations that plaintiff's resignation from his job was the property that defendants obtained was
17 not an "allegation that defendants demanded a thing of value be transferred from plaintiff to
18 them."); *Prime Healthcare Servs., Inc. v. Servs. Emps. Int'l Union*, 97 F. Supp. 3d 1169, 1190
19 (S.D. Cal. 2015) (finding "obtaining property from another" inadequately pled where plaintiffs
20 "only establish that Defendants seek to deprive [plaintiff] of these rights or to coerce [plaintiff] not
21 to exercise these rights, rather than establishing that Defendants seek to acquire these rights.").
22 Plaintiffs' allegations as pled fit more aptly in the category of coercion, which does not qualify as
23 a predicate act under RICO. *See Sekhar*, 570 U.S. at 734 (contrasting the definition of coercion,
24 the "use of threats to compel another person to do or to abstain from doing an act which such other
25 such person has a legal right to do or to abstain from doing," with extortion, "the criminal
26 acquisition of . . . property," at the time the Hobbs Act was enacted and noting Congress's
27 omission of coercion from the Hobbs Act "must have been deliberate.") (quotations omitted).
28 Without allegations that Schultz obtained, or attempted to obtain, possession of property from

Plaintiffs, they have failed to allege extortion under state law or the Hobbs Act, and thus have failed to allege racketeering activity.

Because the Court determines that Plaintiffs have not sufficiently pled racketeering activity under RICO, the Court also finds that Plaintiffs have not alleged a "pattern of racketeering activity," which "requires at least two acts of racketeering activity, one of which occurred after [1970] and the last of which occurred within ten years after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5).

Accordingly, the Court **GRANTS** Schultz's Motion to Dismiss pursuant to Rule 12(b)(6).

## V.   CONCLUSION

For the reasons stated above, the Court **GRANTS** Schultz's Motion to Dismiss. The Court **GRANTS** Plaintiffs leave to amend. If Plaintiffs choose to amend, their Second Amended Complaint shall be filed within 30 days of this order.

**IT IS SO ORDERED.**

Dated: February 6, 2023

_____
THOMAS S. HIXSON
United States Magistrate Judge