United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JACALYN A YOUNG, et al.,
Plaintiffs,
v.
RONALD J SCHULTZ,
Defendant.

Case No. 22-cv-05203-TSH

**ORDER GRANTING MOTION TO DISMISS**

Re: Dkt. No. 25

## I. INTRODUCTION

Pending before the Court is Defendant Ronald J. Schultz's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 25. Plaintiffs Jacalyn A. Young and Diane Lynn filed an Opposition (ECF No. 26) and Defendant filed a Reply (ECF No. 27). For the reasons stated below, the Court **GRANTS** the motion.[1]

## II. BACKGROUND

### A. Factual Background

Plaintiffs Young and Lynn reside in "The Woodlands," a townhome complex in Santa Rosa, California. ECF No. 24 ¶¶ 3-5. Young and Lynn are members of The Woodlands Owners' Association ("HOA"). *Id.* Defendant Schultz also resides in the Woodlands and is a member of the HOA. *Id.* ¶ 7.

On multiple occasions between April 14, 2021 and April 20, 2021, Schultz, or his wife Jo Schultz, emailed Young, as President of the Board of Directors of the HOA, requesting financial information about management of the HOA. *Id.* ¶¶ 22-28.

On April 21, 2021, Schultz sent an email to Young, and he, or possibly others, hand-

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 6, 10, 11.

delivered a letter to Lynn and their other neighbor, Mary Ann Burwell. *Id.* ¶¶ 11, 16. The letters and email demanded "things of value" from all of them, including that Young resign from the HOA Board of Directors. *Id.* ¶ 11. Schultz threatened to publish false information to residents of the HOA and The New York Times if Young, Lynn, and Burwell did not meet his demands. *Id.* This false information included that Plaintiffs and their church were possibly engaging in tax fraud and money laundering. *Id.*

Schultz had stated to others that he wanted to be the "sole HOA Board member." *Id.* ¶ 13. He said he wanted Woodlands to fire the other two members of the HOA Board of Directors and pay him a salary. *Id.*

On July 6, 2021, Young filed a Request for a Civil Harassment Restraining Order against Schultz in Sonoma County Superior Court. *Id.* ¶ 34. The parties signed a Settlement Agreement on July 27, 2021, wherein Schultz agreed to stay away from Young for three years. *Id.*; ECF No. 24-12, Exhibit 12.

On July 19, 2022, Schultz nominated himself to the Board of Directors, in violation of the Settlement Agreement as Young was still on the Board of Directors. *Id.* ¶¶ 37-38.

On August 5, 2022, Young filed a second Request for Civil Restraining Order against Schultz in Sonoma Superior Court. *Id.* ¶ 40. On October 11, 2022, the day before trial in the new Sonoma Superior Court action, Schultz emailed to counsel for Lynn and Young another letter stating "with the help of the Press, my goal is to motivate the IRS, The California Attorney General, and the Franchise Tax Board to seriously investigate" Lynn and Young's involvement in their church. *Id.* ¶ 41; ECF No. 24-15, Exhibit 15. The letter also stated that Schultz wanted Lynn and Young "to CEASE and DESIST weaponizing the judicial system to restrict [Schulz's] free speech." ECF No. 24-15, Exhibit 15.

**B. Procedural Background**

On September 12, 2022, Plaintiffs Young and Lynn filed the instant action against Defendant Schultz and DOES 1-20 for blackmail (18 U.S.C. § 873), mailing threatening communications (18 U.S.C. § 876(d)), and stalking (18 U.S.C. § 2261A). ECF No. 1. On October

4, 2022, Schultz filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] ECF No. 7. On November 18, 2022, the Court dismissed all causes of action, finding the claims were brought under criminal statutes. ECF No. 15. The Court granted leave to file an amended complaint. *Id.*

On December 2, 2022, Young and Lynn filed a First Amended Complaint ("FAC") against Schultz and DOES 1-20 alleging violation of the Racketeer Influenced and Corrupt Organizations statute ("RICO"). ECF No. 16. On December 28, 2022, Schultz filed a Motion to Dismiss the FAC pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). ECF No. 20. On February 6, 2023, the Court granted Defendant's Motion to Dismiss Plaintiffs' FAC, with leave to amend. ECF No. 23.

On March 7, 2023, Plaintiffs filed a Second Amended Complaint ("SAC") against Schultz and DOES 1-20 alleging violation of the RICO statute. ECF No. 24.

On March 21, 2023, Schultz filed a Motion to Dismiss the SAC pursuant to Rule 12(b)(6). ECF No. 25. On April 4, 2023, Plaintiffs filed an Opposition. ECF No. 26. On April 11, 2023, Schultz filed a Reply. ECF No. 27.

## III. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim. A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and quotation marks omitted). Rule 8 provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Twombly*, 550 U.S.

[2] Schultz's motion was not clear that it was made pursuant to Rule 12(b)(6), but the Court treated it as such in its corresponding Order. ECF No. 15 at 1, n.1.

United States District Court
Northern District of California

at 555 (quotations and citation omitted).

In considering a motion to dismiss, the court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citations and quotations omitted). However, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## IV. DISCUSSION

### A. Judicial Notice

As part of Schultz's Reply, he submitted a request for judicial notice. *See* ECF No. 27-1. Schultz seeks judicial notice of an opinion issued March 30, 2023, by the California Court of Appeal, First Appellate District, Division Three, in the action *Jacalyn Young, et al. v. Ronald J. Schultz*, Case No. A165581. *Id.* Schultz argues that the document is relevant to his Motion to Dismiss because the California Court of Appeal found that Schultz's April 21, 2021 letters were "protected activity" under the First Amendment. *Id.* Schultz argues that the letters, therefore, cannot serve as predicate acts of racketeering activity. ECF No. 27 at 10-11. The argument that Schultz's letters are protected activity was not raised in the Motion to Dismiss and the Court thus declines to address it herein. *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) ("It is well accepted that raising of new issues and submission of new facts in [a] reply brief is

improper."); *Ass'n of Irritated Residents v. C & R Vanderham Dairy*, 435 F. Supp. 2d 1078, 1089 (E.D. Cal. 2006) ("It is inappropriate to consider arguments raised for the first time in a reply brief."). As a result, the Court considers the Court of Appeal's decision irrelevant to determination of the Motion to Dismiss and declines to take judicial notice. *See CYBERsitter, LLC v. People's Republic of China*, 805 F. Supp. 2d 958, 963–64 (C.D. Cal. 2011) (declining to take judicial notice of a fact because it "is irrelevant to the instant motions"). Defendant's request for judicial notice is **DENIED**.

**B. RICO Claims**

"To state a civil RICO claim under 18 U.S.C. § 1964(c), a plaintiff must allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as "predicate acts") (5) causing injury to the plaintiff's business or property.'" *Abcarian v. Levine*, 972 F.3d 1019, 1027 (9th Cir. 2020) (quoting *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996)). Plaintiffs allege that Schultz committed two acts of extortion between March 2021 and October 12, 2022, working with other members of the HOA. *See* ECF No. 24 ¶¶ 12, 14, 29. Schultz argues that Plaintiffs have failed to plead the second, third, fourth, and fifth elements of the claim. *See* ECF No. 25-1.

**1. Statutory Standing**

Schultz contests both that Plaintiffs have alleged an injury to business or property and that any such injury is by reason of the alleged RICO predicate acts. ECF No. 25-1 at 16-21. He argues that the SAC fails because the allegations of injury are vague, conclusory, and rely solely on emotional distress. ECF No. 25-1 at 16-18. Plaintiffs respond that they have alleged harm to their business, loss of time, and injury to Plaintiffs' position on the Board of Directors of the HOA. ECF No. 26 at 12. Schultz also argues that Plaintiffs do not allege that Schultz's conduct proximately caused Young's decreased income. ECF No. 25-1 at 18-21. Plaintiffs do not respond to this argument.

The fifth RICO element "causing injury to the plaintiff's business or injury" is also sometimes referred to as RICO's statutory standing requirement. *See Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 975 (9th Cir. 2008) ("A civil RICO 'plaintiff only has standing if, and



United States District Court
Northern District of California

can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation.'") (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 479 (1985)). To avoid dismissal, Plaintiffs must "plausibly allege (1) an injury to 'business or property' that is (2) 'by reason of a violation of section 1962.'" *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 957 (N.D. Cal. 2018) (quoting 18 U.S.C. § 1964(c)). For injury to business or property, the Ninth Circuit requires that plaintiffs in civil RICO actions allege both "concrete financial loss" as well as harm to a specific business or property interest. *See Canyon Cnty.*, 519 F.3d at 975 (quoting *Oscar v. Univ. Students Coop. Ass'n*, 965 F.2d 783, 785 (9th Cir.1992) *abrogated on other grounds by Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005)). "Without a harm to a specific business or property interest—a categorical inquiry typically determined by reference to state law—there is no injury to business or property within the meaning of RICO." *Diaz*, 420 F.3d at 900.

The Court previously found that Plaintiffs' FAC alleged injury in the form of emotional distress, which is not compensable under RICO. ECF No. 23 at 4-5; *Berg v. First State Ins. Co.*, 915 F.2d 460, 464 (9th Cir. 1990) ("[P]ersonal injury, including emotional distress, is not compensable under section 1964(c) of RICO.").[3] The Court now finds that much of the alleged injuries in the SAC are still plainly emotional distress. *See* ECF No. 24 ¶ 48 ("Schultz has stolen . . . her peace of mind"); *Id.* ¶ 49 ("[Schultz's conduct] caused Young to suffer emotional distress, including insomnia, high blood pressure, worry, anxiety and fatigue."). Plaintiffs allege that "Young's decreased income and well-being is directly due to the time, energy, and money needed to fight Schultz in the courts and in the community," and "Schultz has stolen . . . much of Young's time and energy." *Id.* ¶ 48. Injury to Young's "well-being" and loss of time are properly characterized as emotional distress and personal injury. *See Heflebower v. JPMorgan Chase*

[3] Plaintiffs argue in their Opposition that injury was "caused to plaintiffs' property a position on the Board of Directors of the HOA . . . ." ECF No. 26 at 12. The Court is not so sure Plaintiffs make such a claim in the SAC. Nonetheless, the Court adheres to its previous decision finding that "[t]o the extent that Young alleges a property interest in her position as President of the Board of Directors of the HOA, it is not clear what harm to that interest she alleges to have suffered." ECF No. 23 at 4-5. The SAC does not make any additional allegations of harm to Young's position.

*Bank, NA*, No. 1:12-CV-1671 AWI SMS, 2014 WL 897352, at *7 (E.D. Cal. Mar. 6, 2014) ("[E]motional distress and loss of time are not the type of loss that supports a racketeering claim . . . ."); *Angermeir v. Cohen*, 14 F. Supp. 3d 134, 152 (S.D.N.Y. 2014) (finding allegation that plaintiff "had to waste considerable time and effort" responding to defendant's fraudulent lawsuits was not compensable under RICO); *Rylewicz v. Beaton Servs., Ltd.*, 698 F. Supp. 1391, 1396 (N.D. Ill. 1988), *aff'd,* 888 F.2d 1175 (7th Cir. 1989) ("Lost effort and time are properly characterized as non-compensable personal injuries.").

Plaintiffs also allege injuries to business or property as a result of emotional distress. *See* ECF No. 24 ¶ 48 ("[Schultz's] conduct has been so upsetting that Young lost considerable income in her business . . . ."); *Id.* ("Since Schultz began attacking Young, her income has decreased by 42 percent and her well-being has plummeted."). Pecuniary loss derivative of emotional distress is not compensable under RICO. *See Evans v. Arizona Cardinals Football Club, LLC*, 231 F. Supp. 3d 342, 349 (N.D. Cal. 2017) *aff'd*,761 F. App'x 701 (9th Cir. 2019) ("Even if plaintiffs suggest they recently lost employment opportunities or earning capacity wholly as a result of recently discovered health problems, such losses, while economic, nonetheless derive from fundamentally personal injuries and thus cannot give rise to a RICO claim."); *Bokaie v. Green Earth Coffee LLC*, No. 18-CV-05244-JST, 2018 WL 6813212, at *5 (N.D. Cal. Dec. 27, 2018) ("[C]leaning, medical, legal, and other expenses stem from personal injuries and are not compensable under RICO.") (citation omitted); *Ainsworth v. Owenby*, 326 F. Supp. 3d 1111, 1123 (D. Or. 2018) ("[A] plaintiff cannot transform a fundamentally personal injury into a proprietary one by expending financial resources or incurring economic losses therefrom.") (citation omitted); *Hunt v. Zuffa, LLC*, 361 F. Supp. 3d 992, 1000 (D. Nev. 2019) ("Although Hunt alleges that he lost income from not being able to fight while recovering from this injury, 'courts have been clear that even the economic consequences of personal injuries are not compensable under RICO.'") (quoting *Allman v. Philip Morris, Inc.*, 865 F. Supp. 665, 668 (S.D. Cal. 1994)).

The Ninth Circuit has permitted RICO claims where plaintiffs allege injury to a property interest as well as personal injury. *See Diaz,* 420 F.3d at 902 (permitting RICO claim where plaintiff alleged "two types of injuries: (1) the personal injury of false imprisonment and (2) the

property injury of interference with current or prospective contractual relations.”). The *Diaz* Court specified its approach did not confer standing on any plaintiff “suave enough to allege lost employment.” *Id.* at 901. The Court finds Plaintiffs’ allegations of lost income to be the exact kind of creative pleading *Diaz* sought to distinguish.

Almost all of Plaintiffs’ allegations of injury are personal injury or derivative of personal injury. The only exception is the second half of the fourth sentence of paragraph 48 of the SAC, which alleges harm due to the “money needed to fight Schultz in the courts and in the community, as president of the HOA.” ECF No. 24 ¶ 48. However, that conclusory allegation is vague. The SAC contains no specifics concerning what money Plaintiffs spent to fight Schultz “in the community,” or even what that means. There are references in the SAC to a July 6, 2021 state-court request for a restraining order (ECF No. 24 ¶ 34), and an August 5, 2022 second request for a restraining order (ECF No. 24 ¶ 40). Assuming that these are references to “fight[ing] Schultz in the courts,” the causal relationship between these legal proceedings and their attendant expenses, on the one hand, and the alleged predicate acts that took place in April 2021 and October 2022, on the other, is unclear. For example, the alleged threats on October 11, 2022 seem to be a result of the August 5 second request, not a cause of it. ECF No. 24 ¶ 41.

If the vague reference to “money needed to fight Schultz in the courts and in the community, as president of the HOA” were the only defect in the SAC, the Court would grant leave to amend. Courts have been clear that “the cost of filing a RICO action” – i.e., the cost of filing *this* lawsuit – “does not satisfy the concrete financial injury requirement.” *Izenberg v. ETS Servs., LLC*, 589 F. Supp. 2d 1193, 1204 (C.D. Cal. 2008). Less clear is whether legal fees incurred in other lawsuits can constitute RICO injury. The Ninth Circuit has not answered this question, only addressing the issue in an unpublished opinion. *See Thomas v. Baca*, 308 F. App’x 87, 88 (9th Cir. 2009) (“This court has not recognized the incurment of legal fees as an injury cognizable under RICO, and we decline to do so here.”). However, other circuit courts and some California district courts have permitted claims based on such legal fees. *See, e.g.*, *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1167 (2d Cir. 1993) (“[L]egal fees may constitute RICO damages when they are proximately caused by a RICO violation.”); *Handeen v. Lemaire*,

112 F.3d 1339, 1354 (8th Cir. 1997) (finding attorneys' fees incurred as a result of fraudulent claims could constitute injury); *In re Outlaw Lab'y, LP Litig.*, No. 18-CV-840-GPC-BGS, 2020 WL 1953584, at *9 (S.D. Cal. Apr. 23, 2020) (finding injury where plaintiff paid attorney's fees responding to defendants fraudulent demand letters); *Nat.-Immunogenics Corp. v. Newport Trial Grp.*, No. 815CV02034JVSJCGX, 2020 WL 7263544, at *6 (C.D. Cal. Nov. 23, 2020) (determining legal fees spent defending "sham claims" were appropriately characterized as injury).

In sum, the Court determines Plaintiffs have not adequately pled any injury to business or property proximately caused by racketeering activity to show statutory standing under RICO. Because some case law recognizes legal fees as RICO damages, if the failure to allege statutory standing were the only problem with the SAC, the Court would grant leave to amend to add detail to the allegations concerning legal fees incurred in other lawsuits. However, as discussed below, this is not the only problem with the SAC.

**2. Of An Enterprise**

Schultz also argues that Plaintiffs' allegations of an "enterprise" are vague, conclusory, and fail to allege a common purpose, structure, organization, or longevity necessary to accomplish the purpose. ECF No. 25-1 at 21-23. Plaintiffs argue that they have sufficiently alleged an association-in-fact enterprise. ECF No. 26 at 13-14.

The definition of a RICO "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An enterprise will be proven "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981). Here, Plaintiffs allege that Schultz was part of an association-in-fact enterprise. ECF No. 21 at 23. To plead an association-in-fact enterprise, "plaintiffs must plausibly allege the following three elements: (1) a common purpose, (2) a structure or organization, and (3) longevity necessary to accomplish the purpose." *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*, 497 F. Supp. 3d 552, 594 (N.D. Cal. 2020) (citing *Boyle v. United States*, 556 U.S. 938, 946 (2009)).

The Court previously found that the FAC failed to plausibly allege an enterprise, as

Plaintiffs' basis for such a claim was almost entirely Schultz's statement in April 21, 2021 letters that he and his "trusted cohorts" would keep information about Plaintiffs' allegedly fraudulent activities confidential. ECF No. 23 at 6. The Court specifically noted, "[m]ost glaringly, though, there are absolutely no facts alleged that Schultz worked with anyone before or after the week of April 21, 2021." *Id.* Such minimal collective action could not plausibly support "an ongoing organization, a continuing unit, or the longevity necessary to accomplish a purpose." *Id.* The SAC now includes the names of other alleged members of the enterprise and provides dates for when they claim the enterprise began and ended. ECF No. 24 ¶¶ 12, 14. Plaintiffs also allege a common purpose, namely, to extort Young to resign from the Board so Schultz could take her place. *Id.* ¶ 13. However, the SAC still fails to plausibly allege an enterprise within the meaning of RICO.

An enterprise must involve individuals "associated together for a common purpose of *engaging in a course of conduct*." *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007) (emphasis added) (quoting *Turkette*, 452 U.S. at 583). The SAC fails to allege a course of conduct involving anyone beyond Schultz. The Court previously noted that it was unclear from the FAC whether anyone helped Schultz with the April 21, 2021 extortion attempt. *See* ECF No. 23 at 6 ("Plaintiffs claim Schultz's 'trusted cohorts' were involved in emailing and delivering letters on April 21, 2021, but also indicate that Schultz himself delivered the letters."). The allegations in SAC are still confusing and borderline contradictory as to how, if at all, other people acted with Schultz on or around April 21, 2021. *Compare* ECF No. 24 ¶ 55 ("Schultz and his cohorts simultaneously emailed the [April 21, 2021] letter to Young in interstate commerce and hand delivered a blackmail letter."), *with id.* ¶ 54 ("Schultz sent an extortion email to Young in interstate commerce and hand-delivered blackmail letters to Lynn and Burwell."). Whether or not named as defendants, there has to be some plausible suggestion that enterprise members were working with Schultz to extort Young. *See Ellis v. J.P. Morgan Chase & Co.*, 950 F. Supp. 2d 1062, 1089 (N.D. Cal. 2013) (finding plaintiff failed to allege facts showing "unidentified enterprise members" associated with defendant for the common purpose). There is some suggestion that Schultz's wife emailed Young the week prior to April 21, 2021. *See e.g.*, *id.* ¶ 24

("On April 18, 2021, at 4:01 p.m., Jo/Ron Schultz sent an e-mail to Young . . . requesting further financial information."). These emails on their own do not plausibly allege that individuals were associated together in or around April 2021 for the purpose of extorting Young to resign.

Even if the Court considered the sparse allegations of collective activity the week of April 21, 2021 sufficient to show individuals associated together for a common purpose, they do not render plausible that there was a continuing unit or ongoing organization for a RICO enterprise. "[T]he continuity requirement focuses on whether the associates' behavior was ongoing rather than isolated activity." *Odom*, 486 F.3d at 552 (quotation omitted). "An ongoing organization is 'a vehicle for the commission of two or more predicate crimes.'" *Id.* (quoting *United States v. Cagnina*, 697 F.2d 915, 921 (11th Cir. 1983)). The possible action around April 21, 2021 only indicates isolated activity, and it certainly does not suggest a vehicle for the predicate act in October 2022. *Compare Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1176 (E.D. Cal. 2017) ("The FAC does not plead facts showing that defendants acted jointly over a period of time, however, alleging only isolated incidents involving some but not all of the named defendants."),*with Russell v. Maman*, No. 18-CV-06691-RS, 2019 WL 13039744, at *3 (N.D. Cal. June 19, 2019) ("Far from simply listing Defendants' names and asserting they functioned as continuing units, Russell sufficiently alleges the enterprise was an ongoing vehicle for Defendants' purported commission of a series of fraudulent acts," including that one defendant persuaded plaintiff to retain another defendant as a security consultant and referred to him as his "right-hand man."). Plaintiffs' allegations lack the facts necessary to plausibly suggest an association of individuals working together as an "enterprise." Based on the facts alleged, the Court cannot plausibly infer an enterprise under RICO.

**3. Racketeering Activity**

Plaintiffs identify two predicate acts of extortion in support of their RICO claims: 1) the April 21, 2021 letters to Young and Lynn demanding Young resign from the Board of Directors, and 2) the October 11, 2022 email telling Young and Lynn to cease weaponizing the judicial system. ECF Nos. 24 ¶ 29; 24-15, Exhibit 15. Schultz argues that Plaintiffs have failed to allege "racketeering activity" pursuant to RICO because Young does not have a property right in her

Board of Directors position and the position is not something that can be exercised, transferred, or sold. ECF No. 25-1 at 23-25. Plaintiffs argue that they have sufficiently pled extortion under state law as well as the Hobbs Act because they have alleged Schultz attempted to gain Young's Board of Directors position, which is both a thing of value and something to which Young has a property right. ECF No. 26 at 14.

"RICO defines 'racketeering activity' as any of the predicate acts listed in 18 U.S.C. § 1961(1)." *In re JUUL Labs, Inc.*, 497 F. Supp. 3d at 595. Pursuant to the statute, sufficiently pled allegations of extortion under the Hobbs Act, 18 U.S.C. § 1951, or under state law, will in turn sufficiently allege "racketeering activity." *See United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO*, 770 F.3d 834, 837 (9th Cir. 2014) ("'R]acketeering activity' includes, *inter alia*, 'any act which is indictable' under the Hobbs Act, 18 U.S.C. § 1951, or 'any act or threat involving . . . extortion, . . . which is chargeable under State law.'") (quoting 18 U.S.C. § 1961(1)(A), (B)). The SAC clarifies that Plaintiffs are alleging Schultz committed extortion in violation of California Penal Code §§ 518, 519 as well as the Hobbs Act. ECF No. 24 ¶¶ 44-47.

Under the Hobbs Act, "'extortion' means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). Under California Penal Code § 518(a) "[e]xtortion is the obtaining of property or other consideration from another, with his or her consent . . . inducted by a wrongful use of force or fear." *See* Cal. Penal Code § 518(b) (defining "consideration" as "anything of value."). In order for a state offense to be "extortion" within RICO's meaning "the conduct must be capable of being generically classified as extortionate." *See Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 409 (2003). "'Generic' extortion is defined as 'obtaining something of value from another with his consent induced by the wrongful use of force, fear, or threats.'" *Id*. Both generic extortion and the Hobbs Act require obtaining, or seeking to obtain, property. *See id.* at 410 ("Because petitioners did not obtain or attempt to obtain respondents' property, both the state extortion claims and the claim of attempting or conspiring to commit state extortion were fatally flawed."). "Obtaining property requires 'not only the deprivation but also

the acquisition of property.'" *Sekhar v. United States*, 570 U.S. 729, 734 (2013) (quoting *Scheidler*, 537 U.S. at 404). "[M]erely interfering with or depriving someone of property" is insufficient to constitute extortion. *Scheidler*, 537 U.S. at 405. "To violate the Hobbs Act, an alleged extortionist must actually appropriate (or attempt to appropriate) the victim's property such that it can be exercised, transferred or sold." *United States v. McFall*, 558 F.3d 951, 957 (9th Cir. 2009) (citing *Scheidler*, 537 U.S. at 405).

In its prior Order dismissing the FAC, the Court found that Plaintiffs failed to identify property which Schultz could exercise, transfer, or sell, and that, to the extent Plaintiffs argued Young had a property right in her Board of Directors position, Plaintiffs had not alleged that Schultz appropriated or attempted to appropriate that property. ECF No. 23 at 8. The SAC now alleges that Schultz sought Young's resignation so that he could become part of the Board of Directors in her place, and that Schultz announced he was running for such a position in July 2022. ECF Nos. 24 ¶¶ 13, 37; 24-14, Exhibit 14. While the parties dispute whether Young's Board of Directors position constitutes property, the Court finds, regardless, the position is not "obtainable property" within the meaning of the Hobbs Act or generic extortion. *See Sekhar*, 570 U.S. at 736 ("[W]hether one considers the personal right at issue to be 'property' in a broad sense or not, it certainly was not *obtainable property* under the Hobbs Act.") (emphasis in original). The Supreme Court in *Sekhar* analyzed the Hobbs Act and determined "obtaining property" to characterize property that is "transferable—that is, capable of passing from one person to another." *Id*. at 734. *Sekhar* only addressed "obtaining property" under the Hobbs Act, but this Court finds the decision applicable to generic extortion. *See United States v. Kirsch*, 903 F.3d 213, 226 (2d Cir. 2018) (finding the Court's decision in *Sekhar* applies to the "generic" definition of extortion because generic extortion also requires property be obtained). Here, Young's property interest in the Board of Directors position would not be transferrable to Schultz. She could only resign, she could not transfer the role to Schultz.

While not directly on point, the Court finds analogous a Seventh Circuit decision, wherein the circuit analyzed whether a presidential Cabinet position constituted property for purposes of the Hobbs Act. *See United States v. Blagojevich*, 794 F.3d 729, 736 (7th Cir. 2015). The court

noted that *Sekhar* "restricted 'property' to what one owner can transfer to another." *Id.* The court further found the Cabinet position could not be transferred: "The position may be filled by different people, but the position itself is not a transferrable property interest. A position is 'held' or 'occupied' but not 'obtained,' and under *Sekhar* something that cannot be 'obtained' also cannot be the subject of extortion." *Id.* Similarly, Young occupied the Board presidency position, but she could not transfer the position to Schultz. With allegations that Schultz sought something non-transferrable, Plaintiffs have not alleged extortion under the Hobbs Act or state law. *See Wilson v. Ridgeway*, No. 20-CV-00381-PJH, 2020 WL 4590241, at *3 (N.D. Cal. Aug. 7, 2020) (finding a civil extortion case under California law insufficiently pled because "[w]hile plaintiff may have had a right to receive payment under his POA, there is no allegation that defendants demanded a thing of value be transferred from plaintiff to them."). As such, they have not sufficiently alleged predicate acts of racketeering activity.

Because the Court determines that Plaintiffs have not sufficiently pled racketeering activity under RICO, the Court declines to assess whether Plaintiffs have alleged a "pattern" of such activity.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's Motion to Dismiss. As the Court has previously granted Plaintiffs two opportunities to amend their claims, and it appears that further leave would be futile, dismissal is **WITHOUT LEAVE TO AMEND**. *See Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir.1989) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint."); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (Leave to amend should be denied when the court determines that "allegation[s] of other facts consistent with the challenged pleading could not possibly cure the deficiency.").

**IT IS SO ORDERED.**

Dated: May 8, 2023

THOMAS S. HIXSON
United States Magistrate Judge